**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

TOMI HARTLEY, individually and on behalf of
all others similarly situated,

                              Plaintiff,

            vs.                                             CASE NO.  2:23-CV-04891-CMR

URBAN OUTFITTERS, INC.,

                              Defendant.

<u>**DEFENDANT URBAN OUTFITTERS, INC.'S MOTION TO DISMISS COMPLAINT**</u>

Defendant Urban Outfitters, Inc. ("Urban Outfitters"), by and through its undersigned counsel, hereby moves for dismissal of Plaintiff Tomi Hartley's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or, alternatively, Federal Rule of Civil Procedure 12(b)(6) and in support thereof, avers as follows:

1.      Plaintiff, Tomi Hartley, individually and on behalf of all others similarly situated ("Plaintiff"), commenced this action against Urban Outfitters by the filing of a Civil Complaint on December 12, 2023.  Doc. No. 1.

2.      The Complaint asserts one count—violation of Arizona's Telephone, Utility, and Communication Service Records Act (the "Arizona Act")—individually and on behalf of a putative class relating to trackers allegedly embedded in emails received by Plaintiff.  Compl. at ¶¶ 3, 4, Doc. No. 1.

3.      Urban Outfitters was served with the Complaint on or about December 15, 2023.

4.      On February 6, 2024, the Court approved the parties stipulation to extend the time for Urban Outfitters to respond to the Complaint until February 16, 2024.  Doc. No. 9.

5.      Plaintiff alleges that Urban Outfitters is large American clothing retailer that solicits customers to sign up for its email list.  Compl. at ¶ 2, Doc. No. 1.

6.      Plaintiff avers that she and the putative class members are subscribers to Urban Outfitters' email list.  Compl. at ¶ 3 Doc. No. 1.

7.      Plaintiff alleges that the emails which she agreed to receive are embedded with trackers which record when subscribers open and read messages and that Urban Outfitters did not receive consent from subscribers to collect such information.  Compl. at ¶ 4, Doc. No. 1.

8.      According to the Complaint, Plaintiff frequently opened emails from Urban Outfitters between August 2022 and November 2023 and each time she opened an email, she claims Urban Outfitters procured information relating to when she opened and read the email. Compl. at ¶ 7, Doc. No. 1.

9.      While Plaintiff concedes she signed up for Urban Outfitters' email list, Compl. at ¶ 3, Doc. No. 1, she alleges she did not authorize Urban Outfitters to allegedly collect information concerning when she opened and read emails.  Compl. at ¶ 8, Doc. No. 1.

10.     Plaintiff alleges that Urban Outfitters uses two email tracking systems:  Inbox Monster and Salesforce.  Compl. at ¶ 32, Doc. No. 1.

11.     Plaintiff claims that the use of email tracking systems to determine when someone opens and reads an email violates the Arizona Act.  Compl. at ¶ 51, Doc. No. 1.

12.     Plaintiff seeks declaratory, injunctive, and compensatory relief.  Compl. at p. 16, Doc. No. 1.

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

13.     A defendant may challenge a plaintiff's standing by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds of lack of subject matter jurisdiction

because "[t]he issue of standing is jurisdictional." *Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the V.I.*, 218 F.3d 232, 240 (3d Cir. 2000).

14.     When subject matter is challenged under Rule 12(b)(1), the plaintiff bears the burden of showing his or her claims are properly before the court. *Lincoln Ben. Life Co. v. AEI Life, LLC,* 800 F.3d 99, 105 (3d Cir. 2015).

15.     In considering a motion to dismiss for lack of subject matter jurisdiction, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluate for itself the merits of [the] jurisdictional claims.'" *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

16.     Moreover, the court is not limited to the pleadings, but, instead, "can look beyond the pleadings to resolve factual matters related to jurisdiction." *Cestonaro v. U.S.*, 211 F.3d 749, 752 (3d Cir. 2000).

17.     Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside of this limited jurisdiction." *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

18.     Subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-02 (1982).

19.     Article III limits the jurisdiction of federal courts to actual cases or controversies. *Coulter v. SageStream, LLC*, 501 F. Supp. 3d 298, 304 (E.D. Pa. 2020).

20.     A determination that the court lacks subject matter jurisdiction "requires dismissal." *Coulter v. Tatanani*, 737 Fed. App'x 613, 615 (3d Cir. 2018).

21.     To satisfy the standing requirement under Article III, a plaintiff must demonstrate

"'an injury in fact, or an invasion of a legally protected interest that is concrete and particularized . . . a causal connection between the injury and the conduct . . . [a]nd . . a likelihood that the injury will be redressed by a favorable decision.'" *Coulter*, 501 F. Supp. 3d at 304 (quoting *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017)).

22.     These requirements do not change in a class action and the named plaintiff must establish Article III standing. *Id.*

23.     Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1989)).

24.     To establish this element, "a plaintiff must allege 'an invasion of a legally protected interest'" that is concrete—meaning it "must actually exist"—as well as particularized—meaning it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339-40 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

25.     Moreover, the harm alleged must be "'actual or imminent, not conjectural or hypothetical.'" *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (abstract injuries will not suffice).

26.     The complaint must set forth "'facts that affirmatively and plausibly suggest'" a concrete injury. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011)).

27.     Invasion of privacy claims require "obviously, 'private facts' or information that the plaintiff does not leave 'open to the public eye.'" *Cook v. GameStop, Inc.*, No. 2:22-cv-1292, 2023 WL 5529772, at *4 (W.D. Pa. Aug. 28, 2023) (quoting Restatement (Second) of Torts § 625D cmt. b).

28.     Similarly, a claim of intrusion upon seclusion requires evidence that the "defendant intentionally intruded 'upon the solitude or seclusion of another or his private affairs or concerns' and that such intrusion is 'highly offensive to a reasonable person.'"  *Id.* (quoting *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 120 (W.D. Pa. 2019)).

29.     "[P]aramount to both torts is the requirement of private facts or affairs.  *Id.*

30.     A user's browsing history does not constitute personal information or private facts for purposes of establishing a concrete injury.  *Id.* (finding plaintiff lacked standing); *see also In re: BPS Direct, LLC*, MDL 3074, 2023 WL 8458245, at *12 (E.D. Pa. Dec. 5, 2023) (finding website users had no "personal privacy interest in their shopping activity" and holding "viewing activity, search activity, and purchase behavior is [not] enough to establish concrete harm"); *Nyanhongo v. Credit Collection Svcs.*, No. 20-6380, 2021 WL 1546233, at *3 (E.D. Pa. Apr. 20, 2021) (even if defendant violated act by including prohibited information on envelope, plaintiff failed to "clearly allege facts explaining how the information on the envelope conveyed 'private information,'" implicated privacy concerns, or otherwise caused a concrete injury) (quoting *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019)).

31.     Here, while the Complaint contains a conclusory statement that Urban Outfitters invaded her privacy and intruded upon her seclusion by recording when she opened and read emails, Compl. at ¶ 55, Doc. No. 1, Plaintiff fails to identify any private, sensitive, or confidential information procured by Urban Outfitters.

32.     There are no allegations that Urban Outfitters collected her private or personal information or that such information was publicly disclosed.

33.     Simply put, Plaintiff has not sufficiently asserted "'facts that affirmatively and plausibly suggest'" a concrete injury, *Finkelman*, 810 F.3d at 194 (quoting *Amidax Trading,* 671

F.3d at 145), and, thus, she cannot establish Article III standing and her claims must be dismissed.

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

34.     Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

35.     To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

36.     "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (1999).

37.     Following *Iqbal*, the Third Circuit has adopted a two-part analysis for district courts to follow when presented with a motion to dismiss:  "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  While all well-pleaded facts must be accepted as true, the court may disregard any legal conclusions. *Id.* Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 678).

38.     "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.*

39.     The Arizona Act was enacted in 2006 for the purpose of "[p]rohibit[ing] the unauthorized sale of telephone records."  AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785, 2/16/2006.

40.     The legislative history reflects that the Arizona Act "c[a]me about due to the

proliferation of internet sites which sell" telephone records.  AZ H.R. Comm. Min., 2/15/2006.

41.     There was much discussion concerning whether additional security was needed "to prevent unauthorized disclosure of confidential consumer information that is held by telecommunications companies."  AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (2/16/2006); *see also* AZ S.F. Sheet, 2006 Reg. Sess. H.B. 2785, 3/27/2006 (relaying FCC's investigation into "unauthorized procurement and sale of phone records"); AZ H.R. B. Summ. 2006 Reg. Sess. H.B. 2785, 4/24/2006 (highlighting the practice of pretexting whereby data brokers falsely gain access to consumer information by posting as the customer and offering records for sale on the internet).

42.     Against this backdrop, the Arizona Act was adopted to prohibit these unauthorized sales and to direct "**telecommunications carriers** to establish reasonable procedures to protect the consumer against such unauthorized disclosure." *Id.* (emphasis added).

43.     As enacted in 2006, the Arizona Act prohibited a person from (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's "telephone record" without consent by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a "telephone record" without consent, and (3) receiving a "telephone record" by fraudulent, deceptive, or false means. 2006 Ariz. Legis. Serv. Ch. 260 (H.B. 2785) at § 44-1376.01(A)(1)(2)(3).  The 2006 Arizona Act also required telephone companies to establish procedures to protect the unauthorized or fraudulent disclosure of telephone records. *Id.* at § 44-1376.01(B).

44.     The 2006 Arizona Act defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4).  A "telephone company" was defined as any person

7

providing commercial telephone services to a customer.  *Id.* at § 44-1376(4).

45.    The Arizona Act was amended in 2007, just a year after its initial enactment, to expand the prohibition of falsely procuring, selling, or receiving telephone records to include "communication service records" and "public utility records."  AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 3/2/2007.

46.    The legislative history of this amendment is congruent with the legislative history of the original version:  it shows a concern with obtaining confidential phone records and personal information under false pretenses, i.e., pretexting.  *Id.*   The focus was once again on telecommunications carriers.  AZ S.F. Sheet, 2007 Reg. Sess. H.B. 2726, 3/12/2007 and 4/20/2007 (referring to federal laws prohibiting telecommunications carriers from using, disclosing, and permitting access to customer information); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 4/30/2007 (referring to federal Telephone Records and Privacy Protection Act).

47.    Similar to the original version, the 2007 amendment prohibits a person from (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a public utility record, telephone record, or communication service record without consent, and (3) receiving a public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive, or false means.

48.    The Arizona Act has not been further amended since 2007.

49.    Plaintiff alleges that information related to email delivery falls within the definition of "communication service record" under the Arizona Act.  Compl. at ¶ 49, Doc. No. 1.

50.    In the seventeen years since the Arizona Legislature added the term

"communication service record," Arizona courts have not examined the scope of the definition.

51.     Indeed, there are only a handful of cases which discuss the Arizona Act at all—and only in the criminal context of whether an exception to the Act for law enforcement was applicable.

52.     The Arizona defines "communication service record" as follows:

> "Communication service record" includes subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features.  Communication service records do not include the content of any stored, oral, wire or electronic communication or a telephone record.

A.R.S. § 44-1376(1).

53.     On its face, the definition does not include records of when an email is opened and read.  Nor can any such inclusion be inferred from the plain language.

54.     While there is no case law addressing whether a record of when someone opens and reads an email is a "communication service record," case law discussing analogous statutes is helpful.  *See, e.g., In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) (holding static digital identifiers did not qualify as personally identifiable information under video privacy act).

55.     The Arizona Act has **never** been applied in the way Plaintiff suggests and this Pennsylvania court should not be the first court to apply it in this expansive manner.

56.     The opening and reading of emails clearly does not fall within the definition of communication service record under the Arizona Act.

57.     Plaintiff is not entitled to relief under the Arizona Act and, as such, the Complaint should be dismissed.

WHEREFORE, Defendant Urban Outfitters, Inc., respectfully requests that this Honorable

Court grant its Motion to Dismiss and enter an order dismissing all claims against Urban Outfitters,

Inc. with prejudice.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

*/s/ Sara Anderson Frey*
Sara Anderson Frey
Attorney I.D. No. 82835
1717 Arch Street, Suite 610
Philadelphia, PA 19103
215-717-4009
sfrey@grsm.com

Timothy K. Branson (*Pro Hac Vice*)
Patrick J. Mulkern (*Pro Hac Vice pending*)
101 West Broadway, Suite 2000
San Diego, CA 92101
619-696-6700
tbranson@grsm.com
pmulkern@grsm.com

Attorneys for Defendant Urban Outfitters, Inc.

Date:  February 16, 2024