IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMI HARTLEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>URBAN OUTFITTERS, INC.,<br><br>        Defendant. | CASE NO.  2:23-CV-04891-CMR |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT URBAN OUTFITTERS, INC.'S MOTION TO DISMISS COMPLAINT

**I. INTRODUCTION**

Plaintiff Tomi Hartley, individually and on behalf of all others similarly situated ("Plaintiff") seeks relief under an Arizona telecommunications statute, claiming that Defendant Urban Outfitters, Inc. ("Urban Outfitters") violated the statute by using email trackers to record when Plaintiff opened and read emails she signed up to receive.  The fatal flaw in Plaintiff's Complaint is the lack of any factual allegations supporting a claim that she suffered a concrete injury from the alleged procedural violation of the statue.  Thus, she lacks standing to bring her claims.

The presence of a single paragraph alleging in conclusory fashion that Urban Outfitters invaded Plaintiff's privacy fails to satisfy Plaintiff's burden of demonstrating this Court has subject matter jurisdiction.  Plaintiff has not asserted any facts showing how the recording of when she opened and read an email *she requested* invaded her privacy.  She does not allege—and it is not plausible to assume—that a record of when someone opens and reads an email contains any confidential, sensitive, or personally identifying information.  Simply put, Plaintiff has no more of

a privacy interest in when she opens and reads an email than when she walks into and out of a brick and mortar store and is observed by the store's employees. Because Plaintiff lacks standing, this Court does not have subject matter jurisdiction and dismissal of Plaintiff's Complaint is required.

Alternatively, even if Plaintiff did have standing, she is not entitled to relief under the Arizona Telephone, Utility, and Communication Service Records Act ("Arizona Act"). Plaintiff asks this Pennsylvania Court to apply the seventeen year old Arizona statute to a situation—and a technology—to which it has never been applied. Neither the plain language of the Arizona Act nor its legislative history support Plaintiff's claims. Plaintiff, therefore, has failed to state a claim upon which relief may be granted.

## II. FACTUAL BACKGROUND

Plaintiff commenced this action against Urban Outfitters by the filing of a Civil Complaint on December 12, 2023. Doc. No. 1. The Complaint asserts one count of violation of the Arizona Act individually and on behalf of a putative class relating to trackers allegedly embedded in emails received by Plaintiff. Compl. at ¶¶ 3, 4, Doc. No. 1. Urban Outfitters was served with the Complaint on or about December 15, 2023. On February 6, 2024, the Court approved the parties' stipulation to extend the time for Urban Outfitters to respond to the Complaint until February 16, 2024. Doc. No. 9.

Plaintiff alleges that Urban Outfitters is large American clothing retailer that solicits customers to sign up for its email list. Compl. at ¶ 2, Doc. No. 1. Plaintiff avers that she and the putative class members subscribed to Urban Outfitters' email list. Compl. at ¶ 3 Doc. No. 1. Plaintiff alleges that the emails which she agreed to receive were embedded with trackers which record when subscribers open and read messages. Compl. at ¶ 4, Doc. No. 1. Plaintiff alleges she

did not authorize Urban Outfitters to collect such information. *Id.*

According to the Complaint, Plaintiff frequently opened emails from Urban Outfitters between August 2022 and November 2023 and each time she opened an email, she claims Urban Outfitters procured information relating to when she opened and read the email. Compl. at ¶ 7, Doc. No. 1. Plaintiff alleges that Urban Outfitters uses two email tracking systems to procure this information: Inbox Monster and Salesforce. Compl. at ¶ 32, Doc. No. 1. Plaintiff claims that the use of these mail tracking systems to determine when someone opens and reads an email violates the Arizona Act and invaded her and the class members' "right to privacy by spying on when they opened and read an email" and also "intruded upon their seclusion." Compl. at ¶¶ 51, 55, Doc. No. 1. Plaintiff seeks declaratory, injunctive, and compensatory relief. Compl. at p. 16, Doc. No. 1.

### III. LEGAL ARGUMENT

#### A. Plaintiff Lacks Article III Standing

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside of this limited jurisdiction." *Kokken v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-02 (1982). Article III limits the jurisdiction of federal courts to actual cases or controversies. *Coulter v. SageStream, LLC*, 501 F. Supp. 3d 298, 304 (E.D. Pa. 2020). A determination that the court lacks subject matter jurisdiction "requires dismissal." *Coulter v. Tatanani*, 737 Fed. App'x 613, 615 (3d Cir. 2018). Here, Plaintiff lacks Article III standing because she has not alleged a concrete harm, and therefore, this Court does not have subject matter jurisdiction over Plaintiff's claims and dismissal is required.

1.  **Standard of Review**

A defendant may challenge a plaintiff's standing by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds of lack of subject matter jurisdiction because "[t]he issue of standing is jurisdictional." *Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the V.I.*, 218 F.3d 232, 240 (3d Cir. 2000). When subject matter is challenged under Rule 12(b)(1), the plaintiff bears the burden of showing his or her claims are properly before the court. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). In considering a motion to dismiss for lack of subject matter jurisdiction, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluate for itself the merits of [the] jurisdictional claims.'" *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Mortensen v. First Federal Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Moreover, the court is not limited to the pleadings, but, instead, "can look beyond the pleadings to resolve factual matters related to jurisdiction." *Cestonaro v. U.S.*, 211 F.3d 749, 752 (3d Cir. 2000).

2.  **Plaintiff Has Not Alleged a Concrete Harm**

To satisfy the standing requirement under Article III, a plaintiff must demonstrate "'an injury in fact, or an invasion of a legally protected interest that is concrete and particularized . . . a causal connection between the injury and the conduct . . . [a]nd . . a likelihood that the injury will be redressed by a favorable decision.'" *Coulter*, 501 F. Supp. 3d at 304 (quoting *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017)). These requirements do not change in a class action and the named plaintiff must establish Article III standing. *Id.* Injury in fact is "the '[f]irst and foremost' of standing's three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1989)). To establish this element, "a plaintiff must allege 'an invasion of a legally protected interest'" that is

concrete—meaning it "must actually exist"—as well as particularized—meaning it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339-40 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Moreover, the harm alleged must be "'actual or imminent, not conjectural or hypothetical.'" *Kamal v. J. Crew Group, Inc.*, 918 F.3d 102, 110 (3d Cir. 2019). Abstract injuries will not suffice. *Id.* A plaintiff must do more than simply recite all of the possible harms he or she can imagine based on the alleged actions of the defendant. The complaint must set forth "'facts that affirmatively and plausibly suggest'" a concrete injury. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Speculative or conjectural assertions are insufficient. *Id.*

Plaintiff's claims arise out of Urban Outfitters' alleged use of trackers that identify when emails—to which Plaintiff subscribed—were opened and read. Compl., at ¶¶3, 4, Doc. No. 1. The Complaint is devoid of any articulated theory of harm suffered by Plaintiff, with the exception of one conclusory paragraph asserting that Urban Outfitters "invaded Plaintiff's and Class members' right to privacy by spying on when they opened and read an email," which conduct allegedly "also intruded upon their seclusion." Compl. at ¶ 55, Doc. No. 1. There are no allegations of any "concrete" injury sustained by Plaintiff as a result of this alleged invasion of privacy.

In *Cook v. GameStop, Inc.*, No. 2:22-cv-1292, 2023 WL 5529772 (W.D. Pa. Aug. 28, 2023), the court examined whether conclusory allegations that the plaintiff suffered an invasion of privacy constituted a concrete injury for purposes of Article III standing. There, the plaintiff brought suit against an online retailer asserting claims for violation of Pennsylvania's Wiretapping and Electronic Surveillance Control Act on grounds that the retailer used a program to record, save, and replay a visitors' interactions with its online website. The plaintiff alleged that she

5

suffered an invasion of privacy and intrusion upon seclusion as a result of the retailer's alleged violation of the wiretap act. *Id.* at *3.

The district court first noted that even where a plaintiff alleges a statutory violation, he or she must still establish a concrete injury, explaining that "'an injury in law is not an injury in fact.'" *Id.* at *2 (quoting *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S.Ct. 2190, 2205 (2021)). "'[A] bare [statutory] violation by itself is insufficient to demonstrate Article III injury in fact.'" *Id.* at *3 (quoting *Lightoller v. Jetblue Airways Corp.*, No. 23-361, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023)). To determine whether the plaintiff had sufficiently alleged a concrete injury, the court examined whether the information the retailer allegedly intercepted was the kind of information that amounted to an invasion of privacy interest or intrusion upon seclusion. *Id.* at *4. The court stated that invasion of privacy claims require "obviously, 'private facts' or information that the plaintiff does not leave 'open to the public eye.'" *Id.* (quoting Restatement (Second) of Torts § 625D cmt. b). Similarly, a claim of intrusion upon seclusion requires evidence that the "defendant intentionally intruded 'upon the solitude or seclusion of another or his private affairs or concerns' and that such intrusion is 'highly offensive to a reasonable person.'" *Id.* (quoting *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 120 (W.D. Pa. 2019)). "[P]aramount to both torts is the requirement of private facts or affairs. *Id.*

Looking at the information the retailer allegedly intercepted, the court held that such information did not "clear this threshold." *Id.* Specifically, the court noted that in browsing the retailer's website, the plaintiff did not disclose any personal information such as her name, address, telephone number, etc. which could connect the browsing history to her. *Id.* But, even if it could be connected to her, "it still wouldn't be enough." *Id.* at *5. The court found that the type of information—the plaintiff's browsing history—was not personal information or private facts. The

court found this information was no different than if the plaintiff had gone into a brick and mortar store and an employee followed her movements around the store. *Id.* Because the plaintiff failed to demonstrate a concrete injury, she lacked standing and the district court dismissed the complaint.

A similar result was recently reached by this Court in *In re: BPS Direct, LLC*, MDL 3074, 2023 WL 8458245 (E.D. Pa. Dec. 5, 2023). There, website users brought a putative class action against retail website operators, alleging violations of various federal and state wiretapping and privacy statutes. The plaintiffs alleged that the website operators secretly tracked their keystrokes and browsing activity while on the operators' websites. *Id.* at *1. The operators moved to dismiss for lack of subject matter jurisdiction and this Court granted the motion. In doing so, this Court noted that the website users had failed to allege that the website operators captured anything other than their browsing activity and held that "browsing activity is not sufficiently private to establish concrete harm." *Id.* at *10. This Court further found that the website users had no "personal privacy interest in their shopping activity." *Id.* at *12. Because "viewing activity, search activity, and purchase behavior is [not] enough to establish concrete harm," this Court lacked subject matter jurisdiction.

In *Nyanhongo v. Credit Collection Svcs.*, No. 20-6380, 2021 WL 1546233 (E.D. Pa. Apr. 20, 2021), the plaintiff brought suit under the Fair Debt Collection Practices Act ("FDCPA"), claiming the defendant invaded her privacy by mailing a collection letter with prohibited information on the envelope. Even accepting that the defendant violated the FDCPA, this Court held that the plaintiff had failed to plead a concrete injury. *Id.* at *3. The plaintiff did not allege that the data symbols on the envelope revealed any identifying information or that such revelation caused any injury. *Id.* Since the plaintiff failed to "clearly allege facts explaining how the

7

information on the envelope conveyed 'private information,'" implicated privacy concerns, or otherwise caused a concrete injury, this Court granted the defendant's motion to dismiss for lack of subject matter jurisdiction. *Id.* (quoting *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 280 (3d Cir. 2019)).

This Court should following the reasoning of the above discussed cases and hold that Plaintiff has failed to establish a concrete injury. While the Complaint contains a conclusory statement that Urban Outfitters invaded her privacy and intruded upon her seclusion by recording when she opened and read emails, Compl. at ¶ 55, Doc. No. 1, Plaintiff fails to identify any private, sensitive, or confidential information procured by Urban Outfitters. Nor does she show how data collected concerning when someone opens and reads an email they have requested can reveal private information. There are no allegations that Urban Outfitters collected Plaintiff's private or personal information or that such information was publicly disclosed. Without these specifics, the mere collection of when Plaintiff opened and read an email she signed up to receive does not convey private information or constitute the sort of highly objectionable conduct needed to state a claim for invasion of privacy or intrusion upon seclusion.

In short, Plaintiff has not sufficiently asserted "'facts that affirmatively and plausibly suggest'" a concrete injury. *Finkelman*, 810 F.3d at 194 (quoting *Amidax Trading,* 671 F.3d at 145). Plaintiff cannot establish Article III standing. Consequently, her claims must be dismissed.

**B.** **Alternatively, Plaintiff Has Failed to State a Claim Under the Arizona Act**

Even if Plaintiff had standing to bring her claims—which she does not—dismissal is still warranted because Plaintiff has failed to state a claim upon which relief may be granted under the Arizona Act.

### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) authorizes the filing of a motion to dismiss where the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (1999).

Following *Iqbal*, the Third Circuit has adopted a two-part analysis for district courts to follow when presented with a motion to dismiss: "First, the factual and legal elements of a claim should be separated." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While all well-pleaded facts must be accepted as true, the court may disregard any legal conclusions. *Id.* Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 678). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.*

Here, Plaintiff is not entitled to relief under the Arizona Act and, therefore, the Complaint should be dismissed.

### 2. Legislative History of the Arizona Act

The Arizona Act was enacted in 2006 for the purpose of "[p]rohibit[ing] the unauthorized sale of telephone records." AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785, 2/16/2006. The legislative history reflects that the Arizona Act "c[a]me about due to the proliferation of internet sites which sell" telephone records. AZ H.R. Comm. Min., 2/15/2006. There was much discussion

concerning whether additional security was needed "to prevent unauthorized disclosure of confidential consumer information that is held by telecommunications companies." AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (2/16/2006); *see also* AZ S.F. Sheet, 2006 Reg. Sess. H.B. 2785, 3/27/2006 (relaying FCC's investigation into "unauthorized procurement and sale of phone records"); AZ H.R. B. Summ. 2006 Reg. Sess. H.B. 2785, 4/24/2006 (highlighting the practice of pretexting whereby data brokers falsely gain access to consumer information by posting as the customer and offering records for sale on the internet).

Against this backdrop, the Arizona Act was adopted to prohibit these unauthorized sales and to direct "**telecommunications carriers** to establish reasonable procedures to protect the consumer against such unauthorized disclosure." *Id.* (emphasis added). As enacted in 2006, the Arizona Act prohibited a person from (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's "telephone record" without consent by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a "telephone record" without consent, and (3) receiving a "telephone record" by fraudulent, deceptive, or false means. 2006 Ariz. Legis. Serv. Ch. 260 (H.B. 2785) at § 44-1376.01(A)(1)(2)(3). The 2006 Arizona Act also required telephone companies to establish procedures to protect the unauthorized or fraudulent disclosure of telephone records. *Id.* at § 44-1376.01(B).

The 2006 Arizona Act defined "telephone record" as information retained by telephone companies relating to "the telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill." *Id.* at § 44-1376(4). A "telephone company" was defined as any person providing commercial telephone services to a customer. *Id.* at § 44-1376(4).

The Arizona Act was amended in 2007, just a year after its initial enactment, to expand the

prohibition of falsely procuring, selling, or receiving telephone records to include "communication service records" and "public utility records."  AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 3/2/2007.  The legislative history of this amendment is congruent with the legislative history of the original version:  it shows a concern with obtaining confidential phone records and personal information under false pretenses, i.e., pretexting.  *Id.*  The focus was once again on telecommunications carriers.  AZ S.F. Sheet, 2007 Reg. Sess. H.B. 2726, 3/12/2007 and 4/20/2007 (referring to federal laws prohibiting telecommunications carriers from using, disclosing, and permitting access to customer information); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726, 4/30/2007 (referring to federal Telephone Records and Privacy Protection Act).

Similar to the original version, the 2007 amendment prohibits a person from (1) knowingly procuring, attempting to procure, soliciting, or conspiring with another to procure an Arizona resident's public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive or false means, (2) knowingly selling or attempting to sell a public utility record, telephone record, or communication service record without consent, and (3) receiving a public utility record, telephone record, or communication service record without consent or by fraudulent, deceptive, or false means.  The Arizona Act has not been further amended since 2007.[1]

### 3. Records of When Emails are Opened and Read are Not Communication Service Records

Plaintiff alleges that information related to email delivery falls within the definition of "communication service record" under the Arizona Act.  Compl. at ¶ 49, Doc. No. 1.  In the seventeen years since the Arizona Legislature added the term "communication service record,"

---

[1] Plaintiff refers to the amendment to the Arizona Act as a "new law," Compl. at ¶ 27, Doc. No. 1, when in reality it was enacted seventeen (17) years ago.

11

Arizona courts have not examined the scope of the definition. Indeed, there are only a handful of cases which discuss the Arizona Act *at all*—and those few cases all arose in the criminal context of whether an exception to the Act for law enforcement was applicable. A review of the plain language of the Arizona Act clearly demonstrates that a record of when an email is opened and read is not a "communication service record."

> The Arizona defines "communication service record" as follows:
>
> "Communication service record" includes subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communications service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging, or other service features. Communication service records do not include the content of any stored, oral, wire or electronic communication or a telephone record.

A.R.S. § 44-1376(1). On its face, the definition does not include records of when an email is opened and read. Nor can any such inclusion be inferred from the plain language. Plaintiff appears to focus on the reference to "electronic mail" in the definition.[2] Compl. at ¶¶ 51, 52, Doc. No. 1. Words in a statute, however, must be read in context. *Stambaugh v. Killian*, 398 P.3d 574, 575 (Ariz. 2017).

While there is no case law addressing whether a record of when someone opens and reads an email is a "communication service record," case law discussing analogous statutes is helpful. For example, in *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016), the plaintiffs brought a putative class action against Google and the operator of websites that contained

---

[2] To the extent Plaintiff intends to argue her history of opening and reading emails is a "record[] of the path of an electronic communication between the point of origin and point of delivery," that, too, fails. Plaintiff alleges that the email trackers record whether an email has been opened and read *after* delivery and thus, there is no record concerning a path *between* the point of origin and delivery.

12

content for children, alleging that the defendants unlawfully collected personal information. One such claim was that the defendants violated the Video Privacy Protection Act ("VPPA"), which prohibits disclosure of "personally identifiable information" related to video-watching habits, defined as "'information which identifies a person as having requested or obtained specific video materials or services form a video tape service provider.'" *Id.* at 279 (quoting 18 U.S.C. § 2710(a)(3)). The plaintiffs argued that the websites disclosed URL information to Google revealing what videos they watched as well as static digital identifiers such as IP addresses and browser fingerprints that enabled Google to link the watching of the videos to the plaintiffs. *Id.* The websites argued that static digital identifiers did not qualify as personally identifiable information.

The district court dismissed the action and on appeal, the Third Circuit affirmed. In affirming, the court recognized the definition of personally identifiable information was not straightforward and looked at the legislative history behind the VPPA, which was enacted in 1988. The court made note of the changes in technology since that time and remarked that Congress had the opportunity to update the definition of personally identifiable information in 2013 but it chose not to. *Id.* at 288. The court held that regardless of whether digital static identifiers could reveal an individual's video-watching habits, it did "not think that a law from 1988 can be fairly read to incorporate such a contemporary understanding of Internet privacy." *Id.* at 290. The court found that the plaintiff's allegations that Google could assemble these static identifiers to unmask the identity of children was "simply too hypothetical to support liability under the" VPPA. *Id.*

Plaintiff here is likewise trying to insert 2024 technology into a statute enacted in May

13

2007, a month before the first iPhone was released.[3]  As set forth above, the legislative history of the Arizona Act clearly demonstrates that the Legislature was concerned with telecommunications carriers and records of subscribers of telecommunications services.  The Arizona Legislature has had seventeen years to amend the Arizona Act.  It has not and this Court should not substitute its preferences for that of the Legislature of another state.

The Arizona Act has **never** been applied in the way Plaintiff suggests and this Pennsylvania court should not be the first court to apply it in this expansive manner.  The opening and reading of emails clearly does not fall within the definition of communication service record under the Arizona Act.  As such, Plaintiff is not entitled to relief.

---

[3]  https://www.verizon.com/articles/Smartphones/milestones-in-history-of-apple-iphone/   (last visited 2/16/2024)

**IV.    CONCLUSION**

For all the reasons set forth above, Defendant Urban Outfitters, Inc. respectfully requests that this Honorable Court grant its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively pursuant to Federal Rule of Civil Procedure 12(b)(6), and enter an order dismissing all claims against Urban Outfitters, Inc. with prejudice.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

*/s/ Sara Anderson Frey*
Sara Anderson Frey
Attorney I.D. No. 82835
1717 Arch Street, Suite 610
Philadelphia, PA 19103
215-717-4009
sfrey@grsm.com

Timothy K. Branson (*Pro Hac Vice*)
Patrick J. Mulkern (*Pro Hac Vice pending*)
101 West Broadway, Suite 2000
San Diego, CA 92101
619-696-6700
tbranson@grsm.com
pmulkern@grsm.com

Attorneys for Defendant Urban Outfitters, Inc.

Date:  February 16, 2024