IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMI HARTLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>URBAN OUTFITTERS, INC.,<br><br>Defendant. | CASE NO. 2:23-CV-04891-CMR |

**SUR-REPLY IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff hereby submits this Sur-Reply in response to Defendant's Reply brief (ECF No. 13) (hereinafter "Reply") without leave of Court, pursuant to the Court's Policies and Procedures.

**I.     INTRODUCTION**

While Plaintiff may have voluntarily signed up for Defendant's marketing emails, she ***never agreed*** to ***nor was made aware*** of Defendant's invidious use of hidden spy pixels to log and capture sensitive information including the time and place Plaintiff opened a marketing email, how long Plaintiff read the email, Plaintiff's email client type, Plaintiff's email path data, Plaintiff's IP addresses, and Plaintiff's device information.  Compl. ¶¶ 4, 8, 32-38, 52-53, 55.  Unlike observing a customer entering a brick-and-mortar store, Defendant's conduct is a form of pretexting by hiding spy pixels within its email software to capture sensitive information without the recipient knowing.  *Id.* ¶¶ 25, 28-31.  Defendant uses spy pixels to covertly procure "behavior data" and invasively understand how the Plaintiff engages with their content.  *Id.* ¶¶ 34-37.

1

Despite all its straw men and red herrings, Defendant cites no case demonstrating that a violation of a statutory privacy violation is not sufficient to establish Article III standing. Neither does Defendant point to any serious doctrine or analysis confirming it did not violate the plain law of A.R.S. § 44-1376.01.

## II.     ARGUMENT

### A.     Plaintiff Has Article III Standing

Plaintiff simply argues that she has standing because Defendant violated her statutorily elevated privacy rights. Despite pointing to red herrings and misconstruing Plaintiff's arguments, Defendant fails to undermine this elemental point.

Defendant claims that Plaintiff's cited cases "are distinguishable and none support her argument."[1] Reply at 2. But Defendant misconstrues Plaintiff's argument and reliance on those cases. Plaintiff argues that "Courts in this circuit have consistently held post-*TransUnion* that a statutory violation rising in invasion of privacy is exactly the kind of harm traditionally recognized as providing a basis for a lawsuit in American courts." Pl.'s Opp'n Br. at 4 (ECF No. 12) (hereinafter "Opp'n"). All the cases cited in Plaintiff's Opposition brief support this specific contention and Defendant admits that. *Id.* 4-5; Reply at 2 ("[T]he court held the ***plaintiffs established standing because they had pleaded sufficient facts to establish a claim*** under the VPPA.") (emphasis added). Defendant cites no case that disagrees.

While the court in *Barclift v. Keystone Credit Servs., LLC*, did not ultimately find Article III standing for the plaintiff, the court undeniably recognized that statutory invasions of privacy

---

[1] Defendant mistakenly claims that "**[*o*]*nly three*** of the seven cases cited by Plaintiff are from courts within the Third Circuit." Reply at 2 (emphasis added). Plaintiff also cited a fourth, *Doyle v. Matrix Warranty Solutions, Inc.*, 2023 WL 4188313 (D.N.J. June 26, 2023) (finding allegations of TCPA violations sufficient for Article III standing). Opp'n at 2, 7.

give rise to standing. 93 F.4th 136, 143 (3d Cir. 2024). In her opening brief, Plaintiff made no analogy to *Barclift*'s limited holding because Barclift's allegations of invasion of privacy centered on the purported "disclosure" of the information to third parties. In Barclift's case specifically, the court held, there was no "public disclosure" analogous to the Restatement standard. *Barclift*, 93 F.4th at 146 ("When the communication of personal information only occurs between a debt collector and an intermediary tasked with contacting the consumer, the consumer has not suffered the kind of privacy harm traditionally associated with public disclosure."). Plaintiff's claim, on the other hand, arises from the ***direct*** invasion of privacy through Defendant's surreptitious collection of sensitive email records—Plaintiff's privacy allegations do not concern the redisclosure of information. *See* Compl. ¶ 52 ("Plaintiff … never knew that Defendant would be ***procuring sensitive information*** including, but not limited to, time logs of email access, associated email addresses, email client type, email path data, IP addresses, and device information.") (emphasis added); *id* ¶ 55 ("Defendant invaded Plaintiff's and Class members' right to privacy by spying on when they opened and read an email."). In this vein, Plaintiff's claim is completely analogous to a Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, violation—a position Defendant does not appear to dispute—where a statutory violation gives rise to Article III standing. See Opp'n at 4-5; *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) (holding there is Article III standing since defendant violated the TCPA by leaving one "prerecorded promotional offer that lasted one minute on her voicemail").

Defendant also distorts Plaintiff's analogy to *Braun v. Phila. Inquirer, LLC*, 2023 WL 7544160, *5 (E.D. Pa. Nov. 13, 2023) and the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. First, Defendant admits that VPPA plaintiffs can establish standing "because they had pleaded sufficient facts to establish a claim under the VPPA." Reply at 2. This is exactly

3

Plaintiff's argument—Plaintiff pleaded sufficient facts to establish a claim under A.R.S. § 44-1376.01 thus she has standing. Opp'n at 6 ("Here, Plaintiff alleges that Defendant spied on the time and place she opened emails in violation of A.R.S. § 44-1376.01."). Next, Defendant misquotes Plaintiff's brief in an underhanded effort to somehow show that Plaintiff's position is contradictory. Reply at 2-3. But Plaintiff's position is consistent. The VPPA is an analogous privacy statute where a violation gives rise to Article III standing. When it comes to the substantive text and interpretation of A.R.S. § 44-1376.01, however, the VPPA provides no interpretive instruction. *Compare* Opp'n at 2 ("The ***standing element*** of this case is no different than violations of the VPPA") (emphasis added), *with* Opp'n at 12 ("[T]he VPPA[] is a completely ***different statute***, and its ***substantive interpretation*** has no bearing on the instant case.") (emphasis added).

Defendant next reiterates its argument from its opening brief that the violation at hand must be "highly offensive to a reasonable person." Reply at 4. But, as Plaintiff noted in her Opposition brief, under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)), and subsequent case law, the common law standard does not need to be met when a statute elevates the privacy right. Opp'n 5-6. And despite Defendant protestations, *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, and *Miller v. Brooks*, 123 N.C. App. 20 (1996), both illustrate that privacy in communication records like telephone and mail are well established under the Restatement.

Defendant cites again an out of district wiretapping case, *Farst v. AutoZone*, 2023 WL 7179807 (M.D. Pa. Nov. 1, 2023), to claim that a statutory invasion must be "offensive." Reply at 4-5. But this is circular. Instead of engaging with Plaintiff's argument that there is a difference between wiretapping and other statutory invasions of privacy, Defendant simply demands that this case should be analyzed like a wiretapping case. This again fails for the reasons laid out in

Plaintiff's opening brief—since wiretapping is statutorily undefined, allegations must meet the common law threshold for standing. Opp'n at 6-7.

### B.     Defendant Plainly Violates A.R.S. § 44-1376.01

Instead of explaining why it does not procure "access logs" of Plaintiff email activity, Defendant takes issue with the authority Plaintiff relies on. Reply at 6. But even taken on its dictionary definition, Defendant procures an "access log" of Plaintiff email activity. "Access" means "to open or load (a computer file, an Internet site, etc.)" and "Log" means "to make a note or record of: enter details of or about in a log." *Access*, Merriam-Webster, https://www.merriam-webster.com/dictionary/access (last visited April 12, 2024); *Log*, Merriam-Webster, https://www.merriam-webster.com/dictionary/log (last visited April 12, 2024). Defendant, thus, "logs" each time Plaintiff "accesses" her emails. *See* Compl. ¶ 49 ("[S]py pixel are designed to extract … time *logs* of email *access*.") (emphasis added).

Finally, Plaintiff is not asking the Court to "expand" the law. Reply at 6. Plaintiff merely seeks to hold Defendant accountable to the plain meaning of the law which is bolstered by the legislative history of the Telephone Record and Privacy Protection Act and the Hewlett-Packard pretexting scandal. *See* Compl. ¶¶ 14-27; Opp'n at 13.

### III.    CONCLUSION

For all the foregoing reasons, and the reasons laid out in Plaintiff's Opposition brief, this Court has subject matter jurisdiction to hear this case and Plaintiff properly alleges Defendant violated A.R.S. § 44-1376.01 by tracking her sensitive email activity. The Court therefore should deny Defendant's Motion to Dismiss (ECF No. 10) in full.

Dated:  April 15, 2024                                              Respectfully submitted,

**KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT**

*/s/ Kenneth J. Grunfeld*
Kenneth J. Grunfeld
PA Bar No.: 84121
65 Overhill Road
Bala Cynwyd, PA 19004
Tel: (954) 525-4100
grunfeld@kolawyers.com

Yitzchak Kopel*
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: ykopel@bursor.com

*Pro Hac Vice Application Forthcoming

*Attorneys for Plaintiff and the proposed class*